OPINION
On November 25, 1992, appellant, Jonathan Parker, was found to be the biological child of Kayla Williams born August 20, 1990. Appellant was ordered to pay child support in the amount of $35.00 per week, plus poundage. Mother of the child is Virginia Williams. On October 1, 1998, the Ashland County Grand Jury indicted appellant for nonsupport of dependents in violation of R.C.2919.21(B). A jury trial commenced on October 1, 1999. The jury found appellant guilty as charged. By judgment entry filed November 22, 1999, the trial court sentenced appellant to nine months in prison. The trial court also sentenced appellant to an additional sixty days in jail on a contempt charge for statements made during his direct testimony. Said sentences were to run consecutively. Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I. THE TRIAL COURT ERRED WHEN IT ABUSED ITS DISCRETION IN SENTENCING THE DEFENDANT TO A PRISON TERM OF NINE MONTHS UPON CONVICTION OF A FELONY OF THE FIFTH DEGREE WHEN THE DEFENDANT HAS NO PRIOR FELONY RECORD AND OTHER SENTENCING CRITERIA WAS NOT CONSIDERED.
 II. THE TRIAL COURT ERRED WHEN IT DETERMINED THE DEFENDANT TO BE IN CONTEMPT OF COURT WITHOUT FINDING ON THE RECORD THAT THE DEFENDANT WAS GUILTY BEYOND A REASONABLE DOUBT OF SAID CONTEMPT.
 I
Appellant claims the trial court erred by imposing a nine month prison sentence for a fifth degree felony. We disagree. Appellant was convicted of criminal nonsupport of his minor child of over $14,000 from November 25, 1992 to October 1, 1998. Appellant argues the sentence imposed was not justified under the guidelines of R.C. 2929.13(B)(1): (B)(1) Except as provided in division (B)(2), (E), (F), or (G) of this section, in sentencing an offender for a felony of the fourth or fifth degree, the sentencing court shall determine whether any of the following apply:
 (a) In committing the offense, the offender caused physical harm to a person.
 (b) In committing the offense, the offender attempted to cause or made an actual threat of physical harm to a person with a deadly weapon.
 (c) In committing the offense, the offender attempted to cause or made an actual threat of physical harm to a person, and the offender previously was convicted of an offense that caused physical harm to a person.
 (d) The offender held a public office or position of trust and the offense related to that office or position; the offender's position obliged the offender to prevent the offense or to bring those committing it to justice; or the offender's professional reputation or position facilitated the offense or was likely to influence the future conduct of others.
 (e) The offender committed the offense for hire or as part of an organized criminal activity. (f) The offense is a sex offense that is a fourth or fifth degree felony violation of section 2907.03, 2907.04, 2907.05, 2907.22, 2907.31, 2907.321, 2907.322, 2907.323, or 2907.34 of the Revised Code.
(g) The offender previously served a prison term.
 (h) The offender committed the offense while under a community control sanction, while on probation, or while released from custody on a bond or personal recognizance.
 (i) The offender committed the offense while in possession of a firearm. Once a review of these factors is done, a trial court must consider the factors set forth in R.C. 2929.12
concerning the seriousness of the offense, the likelihood of recidivism and whether a prison term is consistent with the overriding purposes and principles of R.C. 2929.11. Lastly, a trial court must determine if the offender is amenable to available community sanctions. The trial court sub judice discussed these factors in his November 22, 1999 sentencing entry as follows: Pursuant to Section 2929.12 of the Ohio revised Code, the Court finds the following factors as indicating that recidivism is more likely than not:
1. The Defendant has a prior history of criminal convictions;
 2. The Defendant has failed to respond favorably to past probation.
Pursuant to section 2929.12 of the Ohio Revised Code, the Court finds the following factor as indicative that recidivism is less likely:
1. The defendant has no known juvenile record.
Pursuant to section 2929.12(B) of the Ohio Revised Code, the Court finds the following factor as indicating that the Defendant's conduct is more serious than conduct normally constituting the offense:
 1. The Defendant caused serious economic harm to the victim as a result of the offense. Pursuant to Section 2929.12(C) of the Ohio Revised Code, The Court does not find evidence of factors which indicate that the Defendant's conduct is less serious than conduct normally constituting the offense.
The Court hereby finds that the Defendant is not amenable to community control sanctions. Upon review, we find the trial court made the necessary three step analysis and so stated at sentencing and in the judgment entry. T. at 422-423. Therefore, under R.C.2953.08(A)(2), appellant's appeal is not one of right but is pursuant to R.C. 2953.08(A)(4) that is, it is contrary to law. A sentence is contrary to law if the finding of justification is erroneous, the prison sentence is not consistent with the purposes and principles of R.C. 2929.11 or the offender is amenable to community control sanctions. We find under R.C. 2953.08(A)(4) that the justifications set forth by the trial court are substantiated by the record. T. at 100, 141-142, 169-170, 289. Appellant has been incarcerated numerous times during his adult life, in Ohio, Colorado, Washington and West Virginia. T. at 289. He has demonstrated a lack of respect for court orders. T. at 316. During the past six years, appellant has lived in six different states, mostly on the streets, in shelters or with friends. T. at 295-296. His employment history includes erratic and minimal employment. T. at 297-303. Appellant dodged child support obligations by quitting work once a child support notification was filed with his employer. T. at 348. At the time of trial, appellant was unemployed and had no ability to pay child support. T. at 318. He admitted to being incapable of holding a steady job and to being a drug addict. T. at 355, 357. The record is replete with instances of appellant's unstable nomadic lifestyle and avoidance of his child support responsibilities. We concur with the trial court that the purposes of the criminal sentencing statute and the lack of amenability to community control sanctions require a prison term sub judice. Assignment of Error I is denied.
 II
Appellant claims the trial court's finding of criminal contempt was against the manifest weight of the evidence. We disagree. On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175. See also, State v. Thompkins (1997), 78 Ohio St.3d 380. The trial court found appellant guilty of direct contempt defined in R.C. 2705.01 as "[a] court, or judge at chambers, may summarily punish a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice." Prior to trial, the trial court in chambers granted a motion in limine regarding any testimony on denial of visitation. Despite this ruling, appellant specifically testified on direct as to the following: Q. Now Miss Williams has testified that you had no contact with her — I'm not talking about anyone else, her family members, children anyone else — just her during the time or pretty much from 1992 to 1998. Is that an accurate statement?
 A. No, it's not. It's a lie. I tried to see her as many times as possible. I've come to see my child —
T. at 291. Thereafter, the following discussion was had in appellant's presence:
 MR. GOOD: There was no reason to ask that question. We went over it in chambers. It's a motion in limine. We have an improper defense before this jury.
 MR. KEARNS: Judge, I did mention in chambers about the reason I would be bringing this up, and I did relate my question specifically to her.
 THE COURT: All right. I'm going to give a curative instruction, and we'll handle it at the time of the deliberations, but there will be no further questions in this area.
 MR. KEARNS: As far as actually seeing Virginia Williams, say nothing more on that?
THE COURT: That's right.
T. at 292. The trial court then gave the following curative instruction in pertinent part:
 Counsel and this witness have been advised that any claims that this defendant might have that he was unable to see this child or denied the right to see the child is not relevant to your consideration in this case. Issues regarding visitation with the child under Ohio law have absolutely nothing to do with and do not affect an individual's duty to pay child support, which is the issue under consideration here.* * * And any comment by the witness in that last question to the contrary, you are instructed to disregard in your deliberations and in your consideration of this case. Counsel has been instructed to move on into a different area of inquiry at this time.
T. at 293.
After this caution, appellant again brought up the issue of visitation which was not provoked by the question posed to him: Q. Mr. Parker, at any time have you made any direct payments to the Ashland County Department of Human Services Child Support Enforcement Agency?
A. Yes, I did. I recall I made one payment, other than the $9. Actually it was $37.50.* * * I came directly into the office. I specifically got in an argument with the lady who was taking the money over visitation rights. And they had sent a gentleman out to talk to me.
T. at 307.
At the sentencing hearing, the trial court addressed the contempt issue as follows: All right. The court is going to find that the conduct of Mr. Parker on the witness stand does rise to the level of direct contempt. It was done in the court's presence. The court is finding that the attempt by Mr. Parker to get into areas of testimony that the court had previously warned him in open court not to go to certainly rises to the level of direct contempt of court. It's the type of thing this court cannot permit to occur in order to maintain order in the courtroom and to maintain the proper decorum. All parties have to live by these same rules. When they are blatantly violated, the court has no choice but to take some action to correct that conduct. The court is making a finding of direct contempt of court at this time, and the defendant Jonathan Parker is guilty of direct contempt of court.
T. at 427-428.
Upon review, we find substantial evidence that appellant understood the trial court's admonition and purposely disregarded it, and no manifest miscarriage of justice. Assignment of Error II is denied.
The judgment of the Court of Common Pleas of Ashland County, Ohio is hereby affirmed.
 _________________________ Farmer, J.
By Wise, J. and Edwards, J. concur.